**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald Wade Medley, | No. CV-16-04060-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

The Social Security Administration (SSA) awarded Plaintiff disability benefits in March 2010, finding a disability onset date of December 18, 2008. (A.R. 22.) In June 2012, the SSA conducted a continuing disability review (CDR) and determined that Plaintiff showed medical improvement sufficient to return to work as of June 1, 2012. (*Id.* at 118.) Plaintiff appealed this determination, appearing in front of a Disability Hearing Officer (DHO), who affirmed the state agency findings of medical improvement. (*Id.* at 134, 145.) Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). (*Id.* at 152.)

On May 7, 2015, Plaintiff and a vocational expert (VE) testified at a hearing before an ALJ. (*Id.* at 65-115.) On November 30, 2015, the ALJ issued a decision consistent with the opinions of the state agency and the DHO, finding that Plaintiff's disability ended within the meaning of the SSA on June 1, 2012. (*Id.* at 37.) Thereafter, Plaintiff requested review of the ALJ's decision by the Appeals Council. (*Id.* at 17-18.)

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (*Id*. at 1-6.)

On November 11, 2016, Plaintiff sought review by this Court. (Doc. 1.) After receipt of the administrative record (Doc. 12), the parties fully briefed the issues for review (Docs. 18, 22, 25). For reasons stated below, the Court finds that Commissioner's decision must be reversed and the case remanded for an award of benefits.

## **BACKGROUND**

To determine whether a claimant's disability is continuing or has ceased, ALJs are required to follow the eight-step CDR process.[1] *See* 20 C.F.R. § 404.1594(f).

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. § 404.1594(f)(1). If the claimant has engaged in substantial gainful activity, the claimant's disability is deemed to have ceased and benefits are terminated. If, however, the claimant is not engaging in substantial gainful activity, the analysis proceeds to step two, where the ALJ analyzes whether the claimant's impairment meets or equals an impairment set out in the Listing of Impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. § 404.1594(f)(2). If a Listing is met, the evaluation stops and the claimant continues to be disabled. If not, the analysis proceeds to step three.

At step three, the ALJ evaluates whether medical improvement has occurred since the original determination of disability. § 404.1594(f)(3). If medical improvement resulted in a decrease in the medical severity of the claimant's impairments, the analysis proceeds to the next step. If there has been no decrease in medical severity, there has been no medical improvement and the analysis skips to step five.

At step four, the ALJ determines whether the medical improvement is related to the claimant's ability to work. § 404.1594(f)(4). Medical improvement is related to the

---

[1] A similar sequential analysis is used to determine whether a claimant's entitlement to supplemental security income (SSI) has ceased. The SSI CDR follows a seven-step review process, which corresponds with steps two through eight of the eight-step CDR for disability benefits. *Compare* 20 C.F.R. § 404.1594(f)(1)-(8), *with* § 416.994(b)(5)(i)-(vii). The SSI CDR differs only in that it does not consider whether the claimant has performed substantial gainful activity.

ability to work if it results in an increase in the claimant's capacity to perform basic work activities. If the improvement is related, the analysis skips to step six. If the improvement is not related, the analysis proceeds to step five.

Step five applies where there has been no medical improvement or improvement that is unrelated to the claimant's ability to work. § 404.1594(f)(3), (4). If there has been medical improvement unrelated to the claimant's ability to work, the ALJ analyzes whether any exceptions apply. § 404.1594(f)(5). If no exception applies, the ALJ must find the claimant to be disabled. If certain exceptions apply, the analysis advances to step six. If certain other exceptions apply, the ALJ must find that the claimant's disability has ended.

At step six, the ALJ evaluates whether the claimant's impairments are sufficiently severe to limit his physical or mental abilities to do basic work activities. § 404.1594(f)(6). If the impairments are not sufficiently severe, the claimant is no longer disabled. Otherwise, the analysis proceeds to step seven, where the ALJ assesses the claimant's current residual functioning capacity (RFC) to determine whether he can perform past relevant work. § 404.1594(f)(7). If the claimant has the capacity to perform past relevant work, the claimant is no longer disabled. If not, the analysis proceeds to step eight, where the ALJ determines whether the claimant can perform any other substantial gainful activity. § 404.1594(f)(8). If so, the claimant is no longer disabled. If not, the claimant's disability continues.

Here, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since June 1, 2012. (A.R. 24.) At step two, the ALJ determined that Plaintiff's impairments do not meet or equal the severity of one of the listed impairments in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. (*Id.* at 27-29.) At step three, the ALJ determined that Plaintiff experienced medical improvement as of June 1, 2012. (*Id.* at 29.) At step four, the ALJ found Plaintiff's medical improvement was related to his ability to work because it resulted in an increase in his RFC. (*Id.* at 30.) Because the ALJ found that the improvement related to Plaintiff's ability to work, she proceeded to

step six and determined that Plaintiff's impairments, in combination, were severe. (*Id.*) At step seven, the ALJ found that Plaintiff:

> has had the [RFC] to perform light work . . . except no climbing of ladders, ropes or scaffolds; [he should] avoid concentrated exposure to extreme cold and hazards such as unprotected heights. [He] is also limited to occasional climbing of ramps and stairs, kneeling, crouching and crawling.

(*Id.* at 30-35.) The ALJ also found that Plaintiff is incapable of performing his past relevant work. (*Id.* at 35-36.) At step eight, however, after considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.* at 36.) Accordingly, the ALJ concluded Plaintiff was no longer disabled.

## **STANDARD OF REVIEW**

It is not the district court's role to review the ALJ's decision de novo or otherwise determine whether the claimant is disabled. Rather, the court is limited to reviewing the ALJ's decision to determine whether it "contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla but less than a preponderance, and "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* The court, however, "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* Nor may the court "affirm the ALJ on a ground upon which he did not rely." *Id.*

In determining whether the ALJ committed legal error, the district court is bound to apply the legal standards imposed by the law of this Circuit. This includes the requirement that, even when contradicted by another physician, if "the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id.* at 632.

**DISCUSSION**

Plaintiff argues that it was impossible for the ALJ to properly compare his prior disability with his current condition because the ALJ failed to obtain the medical records used to make the SSA's initial disability determination. (Doc. 19 at 14-15.) Plaintiff argues that a remand for award of benefits is appropriate, however, because, even assuming that the ALJ properly developed the record during the CDR process, the ALJ improperly rejected his treating physicians' medical opinions when formulating his RFC. (*Id.* at 16-17.) Having reviewed the record and the parties' briefs, the Court concludes that the ALJ erred in rejecting the opinions of Plaintiff's treating physicians, and that the ALJ would have been compelled to find Plaintiff disabled had she credited these opinions. Because this conclusion is dispositive, the Court does not reach Plaintiff's alternative assignments of error.

**I. The ALJ Erred in Rejecting the Opinions of Plaintiff's Treating Physicians**

In weighing medical source opinions, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight generally should be given to the opinion of a treating physician than to the opinions of non-treating physicians because treating physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). However, a treating physician's opinion is entitled to controlling weight only if the opinion is well-supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the case record. §§ 404.1527(c)(2), 416.927(c)(2). Where a treating physician's opinion is contradicted, it may only be rejected with "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making

findings." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988).

Dr. Kahlon, Plaintiff's treating specialist, opined that Plaintiff could: (1) lift and carry less than ten pounds, (2) stand and/or walk less than 2 hours in an 8-hour workday, and (3) sit less than 6 hours in an 8-hour workday. (A.R. 691-93.) Dr. Kahlon also opined that Plaintiff needed to alternate positions every 15 minutes and that it was medically necessary for Plaintiff to use an assistive device on all terrains. (*Id.*) Similarly, Dr. Manzanares, Plaintiff's primary care physician, opined that Plaintiff could: (1) lift and carry less than ten pounds, (2) stand and/or walk less than 2 hours in an 8-hour workday, and (3) sit less than 6 hours in an 8-hour workday. (*Id.* at 688-90.)

Because Dr. Kahlon's and Dr. Manzanares' opinions were contradicted by a state agency medical consultant (*Id.* at 475-82), the ALJ was required to provide specific and legitimate reasons, supported by substantial evidence in the record, for rejecting them. The ALJ assigned "no weight" to Dr. Kahlon's and Dr. Manzanares' opinions, concluding that they were inconsistent with "correlating medical evidence" and Plaintiff's reported daily activities. (*Id.* at 34.) Neither of these reasons is sufficient.

First, the ALJ failed to cite a single medical record contradicting the opinions of Plaintiff's treating physicians. Instead, the ALJ summarily concluded that the medical records point towards an adverse conclusion, making no effort to identify specific records supporting her finding or relate those records to any of the specific medical opinions she rejected. To say that medical opinions are not consistent with the longitudinal records without offering further explanation does not achieve the level of specificity required. *Embrey*, 849 F.2d at 421 ("The ALJ must do more than offer his conclusion.").

Second, the ALJ's conclusion that the treating physicians' opinions are inconsistent with Plaintiff's reported daily activities is not supported by substantial evidence in the record. The ALJ found that:

> [Plaintiff] reported that he is able to watch television, watch his three-year old nephew, read, shop at a convenience store which he walks to and operate a motor vehicle on a regular basis, which requires a significant level of sitting, arising from a seated position, and the use of hand and foot controls,

> as well as sustained concentration and multi-step decision making. All of the above activities suggest a greater degree of functional capability than claimed.

(A.R. 31-32.) But this description mischaracterizes the record.

For example, the ALJ noted that Plaintiff regularly watches television and reads, but ignores that he testified, consistent with his physicians' opinions, that when doing these activities he must alternate between sitting and standing every 15-20 minutes. (*Id.* at 96-97.) Likewise, although Plaintiff testified that, "I go to my sister's. I have a nephew that we keep an eye on," he later clarified, "I'm just saying he's around . . . But I would never, I can't, [] watch him . . . like a baby sitter." (*Id.* at 96.) Plaintiff testified that he brought up the subject only to explain that "[his nephew]'s there . . . so it's kind of like he's a factor in our lives." (*Id.*) The ALJ also found that Plaintiff operates a car on a regular basis, but ignored that Plaintiff testified he drives "like once a month," "not very far," and only when he is unable to arrange an alternative mode of transportation. (*Id.* at 98.) More egregiously, the ALJ found that Plaintiff reported walking to a local convenience store when the record reveals no such testimony. Rather, Plaintiff testified that he drove to the convenience store and that even with the assistance of his cane he was unable to walk without issue. (*Id.* at 98-100.) In short, an examination of the testimony shows that the ALJ erred in characterizing Plaintiff's statements to reach her conclusion. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (finding that the ALJ erred when mischaracterizing statements and documents contained in the record to reach the conclusion that plaintiff had exaggerated her symptoms).

Moreover, the ALJ failed to explain how activities such as reading, watching television, watching his three-year old nephew, and driving short distances are inconsistent with any of the limitations assessed by the treating physicians. *See Zavalin v. Colvin*, 778 F.3d 842, 848 (9th Cir. 2015) (rejecting ALJ reliance on the claimant's activities where there was no indication of the extent, manner, or complexity of those activities). For these reasons, the Court concludes that the ALJ erred in discrediting the opinions of Plaintiff's treating physicians.

## II. Remedy

Having determined that the ALJ committed reversible error, the Court has discretion to remand the case for further development of the record, or to credit the improperly rejected evidence as true and remand for an award benefits. *Reddick*, 157 F.3d at 728. In deciding whether to remand for an award of benefits, the Court considers whether: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Triechler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1100-01 (9th Cir. 2014). All three conditions of the credit-as-true-rule are met here.

First, for the foregoing reasons, the Court finds that the ALJ's decision to reject Plaintiff's treating physicians' opinions is neither free of legal error nor supported by substantial evidence. Second, further proceedings would not serve a useful purpose because the ALJ's error was not due to a failure to develop the record. Finally, during the hearing, the VE testified that someone with the limitations assessed by Plaintiff's treating physicians would be unable to perform Plaintiff's past relevant work or other work. (A.R. 108.) Accordingly, if the treating physicians' opinions were credited as true, the ALJ would be required to find Plaintiff continually disabled. The Court therefore exercises its discretion to remand for an award of benefits.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **REVERSED** and the case **REMANDED** for an award of benefits. The Clerk shall enter judgment accordingly and terminate the case.

Dated this 23rd day of October, 2017.

Douglas L. Rayes
United States District Judge